UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE HOOSIER,

             Plaintiff                       Case No. 2:16-10688

                                          District Judge Denise Page Hood

v.                                 Magistrate Judge Anthony P. Patti

WENDY LIU, *et al.*,

             Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT THE CONSTRUED
MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY
DEFENDANTS WENDY LIU, N.P., SHI-YU TAN, M.D., RICKEY
COLEMAN, M.D., AND STEVEN BERGMAN, M.D.  (DE 26) AND TO
GRANT IN PART AND DENY IN PART THE MOTION FOR SUMMARY
JUDGMENT FILED BY DEFENDANTS VICKI CARLSON AND RENYU
XUE (DE 35)**

**I.  RECOMMENDATION:**  Because Plaintiff failed to exhaust his administrative

remedies, the Court should **GRANT** the motion for judgment on the pleadings,

which should be construed as a motion for summary judgment, filed by Defendants

Wendy Liu, N.P., Shi-Yu Tan, M.D., Rickey Coleman, M.D., and Steven

Bergman, M.D.  (DE 26.)  The Court should also **GRANT** Defendant Vicki

Carlson's motion for summary judgment but should **DENY** Defendant Renyu

Xue's motion for summary judgment.[1]  (DE 35.)

## II.  REPORT

### A.  Background

The Complaint is forty-three page long, handwritten and sometimes difficult

to read.  However, it is not necessary to set forth many of the details therein

because they are irrelevant to the limited issues before the Court.  In February

2016, Plaintiff, a state prisoner who is proceeding *pro se*, brought this lawsuit

under 42 U.S.C. § 1983, alleging claims of deliberate indifference to his medical

needs, in violation of the Eighth Amendment, as well as claims based on the

Americans with Disabilities Act ("ADA"), the Rehabilitation Act and the Federal

Tort Claims Act. (DE 1.)  He names eleven Defendants, including a Jane Doe, all

of whom are medical professionals involved in his treatment for ulcerative colitis

and Raynaud's disease.[2]  In March 2016, Chief Judge Hood referred all pretrial

---

[1] In his Complaint, Plaintiff refers to Xue only as "Renyu," ostensibly because he was unaware of her full name." (DE 1 at 18, ¶64.)

[2] Ulcerative colitis is "a chronic inflammatory disease of the colon that is of unknown cause and is characterized by diarrhea with discharge of mucus and blood, cramping abdominal pain, and inflammation and edema of the mucous membrane with patches of ulceration[.]"  https://www.merriam-webster.com/dictionary/ulcerative%20colitis#medicalDictionary (last visited January 17, 2017).  Raynaud's disease is "a vascular disorder that is marked by recurrent spasm of the capillaries and especially those of the fingers and toes upon exposure to cold, that is characterized by pallor, cyanosis, and redness in

matters to me, including preparing a report and recommendation on all dispositive motions.  (DE 8.)  Specific additional facts will be discussed as needed later in this Report and Recommendation.

### B.  Pending Motions

In July 2016, Defendants Liu, Tan, Coleman and Bergman filed a joint "partial motion for judgment on the pleadings," which argues that all claims against Tan, Coleman and Bergman, and some claims against Liu, should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing this action, as is required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  (DE 26.)  While that motion was pending, in November 2016 Defendants Carlson and Xue filed a joint motion for summary judgment, alleging that all claims against them should also be dismissed based upon Plaintiff's failure to exhaust his administrative remedies.  (DE 35.) Both motions are fully briefed and, thus, ready for adjudication.[3]  To attempt to reduce unnecessary litigation expenses, in November 2016 the Court granted as unopposed Defendants Liu, Tan, Coleman and Bergman's motion to temporarily

---

succession usually accompanied by pain, and that in severe cases progresses to local gangrene[.]"  https://www.merriam-webster.com/medical/Raynaud's%20disease (last visited January 17, 2017).

[3] Carlson and Xue did not file a reply by the deadline set by the Court.  (DE 37.)

3

stay discovery on all matters except exhaustion of remedies, pending resolution of their dispositive motion.  (DE 33.)

### C.  Standard of Review

#### 1.  The Motion for Partial Judgment on the Pleadings Should Be Construed as a Motion for Summary Judgment

Ascertaining the proper standard of review is more complex than usual since each pending motion was brought in a procedurally distinct manner.  Specifically, Defendants Liu, Tan, Coleman and Bergman filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), whereas Defendants Carlson and Xue filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Sometimes courts have considered motions based on a failure to exhaust administrative remedies to have been brought pursuant to "unenumerated" subsections of Rule 12(b).  *See* DE 26 at 24-25 (citing cases).   Importantly, however, the moving Defendants do not cite similar cases in which courts have resolved exhaustion questions as a motion for judgment on the pleadings under Rule 12(c).

Though there is no binding Sixth Circuit or Supreme Court precedent on point, this precise procedural issue was recently examined extensively and persuasively in this Court by Judge Lawson in *Anderson v. Jutzy*, 175 F.Supp.3d 781 (E.D. Mich. 2016).  Judge Lawson concluded in relevant part as follows:

The plaintiff objects to converting the defendant's motion for summary judgment into an unenumerated Rule 12(b) motion. . . . The Court agrees that characterizing the motion as having been brought under Rule 12(b) is not proper . . . .

As noted above, a prisoner's failure to exhaust administrative remedies is an affirmative defense, which a defendant must plead and prove. *Jones*[*v. Bock*], 549 U.S. [199,] at 216, 127 S.Ct. 910[(2007)]. As a general rule, affirmative defenses must be raised by a responsive pleading. Fed. R. Civ. P. 12(b) (stating that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required"). However, Rule 12(b) lists seven specific defenses that may be raised by motion. A failure to exhaust defense … is not included among the seven grounds . . . .

Once an affirmative defense is asserted, it may be adjudicated at any point in the development of a lawsuit that the rules of procedure allow. As the *Jones* Court noted, because a plaintiff need not anticipate or plead around an exhaustion defense, that defense usually may not be addressed in a motion under Rule 12(b)(6) for failure to state a claim. However, the exhaustion affirmative defense may be raised by a motion for summary judgment if the defendant successfully demonstrates that no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law on that defense . . . .

The summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence. As the magistrate judge pointed out in *Twohig v. Riley* [2013 WL 3773365 (E.D. Mich. July 17, 2013)], Rule 12(b)(6) does not appear to be the proper vehicle to address an exhaustion defense under the PLRA, because failure to exhaust is not a pleading requirement.

The magistrate judge in *Twohig* also reasoned that summary judgment appears to be inappropriate for exhaustion issues because there is no determination of the merits. However, that also is not entirely correct. A motion for summary judgment on the exhaustion issue necessarily addresses the merits of an affirmative defense. The *Twohig* court cited

5

> *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th Cir.2003), to support
> its conclusion that an unenumerated Rule 12(b) is preferable to a
> summary judgment motion. However, *Wyatt* was explicitly overruled
> on that issue by *Albino v. Baca*, 747 F.3d 1162 (9th Cir.2014) (en
> banc), for deviating from the "'usual practice under the Federal Rules
> on the basis of perceived policy concerns.'" *Id.* at 1168 (quoting
> *Jones*, 549 U.S. at 212, 127 S.Ct. 910).
>
> In *Albino*, the court recognized that the *Wyatt* panel's resort to an
> "'unenumerated' (that is, non-existent)" rule did not square with the
> Supreme Court's admonition in "*Jones* against deviating from 'the
> usual practice under the Federal Rules.'" *Id.* at 1166, 1169. The court
> reasoned that summary judgment under Rule 56 was the more
> appropriate procedural vehicle to consider whether a prisoner had
> exhausted administrative remedies. *Id.* at 1170. The *Albino* court
> joined the Second, Third, Fifth, and Seventh Circuits, which all "use a
> motion for summary judgment, as opposed to an unenumerated Rule
> 12(b) motion" to resolve the question whether a prisoner had failed to
> exhaust administrative remedies under the PLRA.

175 F.Supp.3d at 786-788 (citations omitted).  The Court, therefore, should

construe the motion for partial judgment on the pleadings as a motion for summary

judgment.

Generally, parties are entitled to notice before a motion for judgment under

the pleadings under Rule 12(c) is converted to a motion for summary judgment.

*See* Rule 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the

pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56. All parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion.").

However, since, as noted in *Anderson*, many opinions have been issued using Rule

56 to resolve exhaustion issues, no party should be truly surprised if the Court

converts Defendants' Rule 12(c) motion to a motion for summary judgment.

Indeed, Defendants' motion shows that they were aware such a conversion could

occur. *See* DE 26 at 26 ("If the Court opts to convert this Motion to a Fed. R. Civ.

P. 56 motion, Defendants request that the Court also grant leave to Defendants to

file an additional motion for summary judgment on the merits of the treatment

provided following discovery.").[4]  Moreover, Defendants cannot suffer tangible

prejudice from the conversion since this Report and Recommendation is favorable

to them.

Similarly, Plaintiff was obviously aware of the possible conversion of the

motion for judgment on the pleadings to a motion for summary judgment because

he styled his response an opposition to "Defendant's [sic] Motion for Partial

Summary Judgment[.]"  (DE 30 at 1.)  Indeed, without subsequent objection by

Defendants, Plaintiff submitted a declaration under penalty of perjury as part of his

opposition to the motion (DE 30 at 2-6), as well as various prison disbursement

authorizations and kites.  (*Id.* at 33-39.)  Those matters, which are outside the

pleadings and are not public records, have not been objected to by Defendants or

---

[4] Absent permission of the Court, a party is only permitted to file one motion for
summary judgment under Local Rule 7.1(b)(2).  The Undersigned will not
preclude any remaining Defendant from filing a dispositive motion on the merits of
Plaintiff's Complaint later.

excluded by the Court, which is another factor weighing in favor of converting the motion for judgment on the pleadings to a motion for summary judgment.

### 2. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 Fed. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving

8

party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville and Davidson Cnty.*, 432 Fed. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### 3.  Exhaustion

#### a.  Standards of Review

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."

9

*Jones*, 549 U.S. at 203.  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court."  *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court."  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).  The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit."  *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with

10

the system's procedural rules unless noncompliance carries a sanction . . . .").

However, "inmates are not required to specially plead or demonstrate exhaustion in

their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust

administrative remedies is an affirmative defense under the PLRA.  As such,

Defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d

452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a

PLRA plaintiff has not exhausted his administrative remedies.").

### b.  Michigan Prison Grievance Procedures

Pursuant to its Policy Directive 03.02.130, dated July, 9, 2007, the

administrative remedies available at the MDOC are as follows.  First, the inmate

must attempt to resolve any issue with the staff member involved within two

business days of becoming aware of a grievable issue.  (DE 26-2, ¶P.)  If the issues

are not resolved within five business days, the inmate may file a Step I grievance

using the appropriate form.  (*Id.*)  "Dates, times, places, and names of all those

involved in the issue being grieved are to be included." (*Id.* at ¶R.)  The inmate

should receive a response within fifteen business days of filing the grievance.  (*Id.*

at ¶X.)

If the inmate is dissatisfied with the disposition of the grievance, or does not

receive a response by ten business days after the due date, he or she may file a Step

11

II grievance using the appropriate form.  (*Id.* at ¶ BB.)  As with Step I, a response to the Step II grievance should be issued within fifteen business days.  (*Id.* at ¶CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the response was due, he or she may file a Step III grievance.  (*Id.* at ¶ FF.)  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### c.  Exhaustion as to Defendants Liu, Tan, Coleman and Bergman

Defendants Tan, Bergman and Coleman contend that Plaintiff failed to exhaust his remedies as to *all* claims against them; Defendant Liu contends that only *some* of the claims against her are unexhausted.  The Court will address each Defendant separately.

### i.  Defendant Liu

Plaintiff has pleaded numerous claims against Defendant Liu, a nurse practitioner at the G. Robert Cotton Correctional Facility.  However, Liu contends that only the following claims are unexhausted:  (1) failure to provide "reasonable accommodations" to Plaintiff in violation of the ADA and the Rehabilitation Act (DE 1 at ¶161); (2) violation of the Eighth Amendment by cancelling accommodations Plaintiff was receiving (*id.* at ¶165); (3) infliction of emotion

12

distress, in violation of the Federal Torts Claims Act (FTCA), stemming from an email Liu purportedly sent to a non-party containing allegedly slanderous statements (*id.* at ¶168).[5]

In January 2015, Plaintiff filed a Step I grievance, number JCF-2015-01-0189-12I, against Liu alleging that she had "changed/deleted" medical orders without his having seen a physician, including such things as his "extra pillow; extra blanket; [and] ice detail . . . ." (DE 26-1 at 60.) That grievance was denied because Liu, as a nurse practitioner, was deemed to have possessed the authority under applicable regulations to make the changes at issue. (*Id.* at 61.) A copy of the denial was provided to Plaintiff on February 6, 2015. (*Id* at 60*.*) Plaintiff attempted to appeal to Step II, but that Step II appeal was denied as untimely on March 19, 2015, and a copy of that denial was furnished to Plaintiff the next day. (*Id.* at 58-59.) The Step II denial "recoded" the appeal number to JCF-15-01-189-28E. (*Id.* at 59.) In November 2015, Plaintiff's Step III appeal was denied without analysis. (*Id.* at 57.)

---

[5] Defendants assert there are two separate FTCA claims stemming from the email in question, one based on defamation by causing intentional infliction of emotional distress and one based on slander. Though the Court is skeptical that ¶168 of the Complaint, containing the FTCA claims based on the email, sets forth two separate causes of action, the resolution of the exhaustion issue is the same whether there is one cause of action or two.

Plaintiff's response to Liu's exhaustion argument is not a paradigm of clarity.  Seemingly, he argues that his Step II appeal should not have been denied as untimely filed.  Importantly, however, Plaintiff does not point to additional timely, fully appealed grievances regarding Defendant Liu.[6]

Paragraph BB of the relevant grievance policy gives an inmate dissatisfied with the response to a Step I grievance ten business days after receiving a Step I response in which to file a Step II grievance.  (DE 26-2 at 5.)  <u>Plaintiff simply has not shown that he met that timeline.</u>  Though Plaintiff seems to argue to the contrary, the Sixth Circuit has definitively held that "[t]he PLRA's exhaustion requirement, contained in 42 U.S.C. § 1997e(a), requires 'proper' exhaustion, *which includes compliance with a state agency's timeliness deadlines*."  *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (emphasis added).

Because Plaintiff has not shown he complied with the applicable deadline for filing a Step II grievance, a failure which the prison authorities explicitly relied upon to deny the grievance at Steps II and III, Plaintiff has failed to exhaust

---

[6] Plaintiff attached Grievance JCF 15-03-0626-12Z to his response.  (DE 30 at 31.) However, that February 2015 grievance does not pertain to the issues in either summary judgment motion as it involves Plaintiff's allegedly improper transfer to a different facility.  (DE 26-1 at 45.)  Moreover, that grievance was denied at Steps II and III on timeliness grounds.  (*Id.* at 40-42.)  Thus, the Court will not further discuss it.

properly his administrative remedies as to Grievance JCF-15-01-189-28E.[7]  Since

that is the only grievance regarding the alleged failure to make reasonable

accommodations under the ADA and Rehabilitation Act, and the similar claim that

the cancellation of his accommodations violated the Eighth Amendment, Liu

should be granted summary judgment on those claims.

A similar conclusion is appropriate for Plaintiff's claims against Liu based

on the allegedly slanderous email.  On March 10, 2015, Plaintiff submitted

grievance JCF-2015-03-0627-12D4, which is the sole grievance regarding the

email.  (DE 26-1 at 49-51.)  That grievance alleged that Liu sent an email to

---

[7] Moreover, Plaintiff's seeming argument that the Step II appeal was timely under
the prison mailbox rule is without merit because:  a) he has not shown that he
mailed a Step II grievance within ten business days of receiving the Step I
response; and b) the prison mailbox rule is already in effect pursuant to ¶S of the
policy statement. *See* DE 26-2 at 4 ("Grievances and grievance appeals at all steps
shall be considered filed on the date sent by the grievant.").

In addition, Plaintiff seems to argue that he could not have timely completed
the grievance process because he did not have the money to obtain copies of his
medical records.  (DE 30 at 13.) However, there is no discernible reason why
Plaintiff had to have copies of his medical records to comply with the grievance
deadlines.

Finally, ¶G(4) of the grievance policy (which is misnumbered as G(3) due to
the existence of two subsections labeled G(2)) provides that grievances should not
be rejected as untimely if there is a "valid reason for the delay; e.g., transfer."  (DE
26-2 at 2.)  To the extent that Plaintiff may be arguing that he had a valid reason
for tardily filing any Step II grievances (and the scattershot nature of his brief
makes it unclear if he is even making such an argument), he has not shown clearly
and with specificity the date(s) of the transfer(s) or how quickly thereafter he
initiated the Step II proceedings.  Moreover, though ¶S of the grievance policy
permits extensions of time (DE 26-2 at 4), Plaintiff has not shown that he requested
any pertinent extensions.

"medical staff health care [sic] provider" Raul Tamada which, among other things, asserted that Plaintiff was "pimping transvestite's [sic][,]" which somehow resulted in Plaintiff receiving improper healthcare. (*Id.* at 51) (capitalization standardized).  On April 3, 2015, the Step I grievance denial was returned to Plaintiff. (*Id.* at 49.)  The grievance was denied at Step II because it was untimely, having been submitted on June 10, 2015. (*Id.* at 48.)  The grievance was also recoded as JCF-15-03-627-28E. (*Id.*).  The October 2015 Step III grievance response simply stated that the previous rejection of the grievance at Steps I and II was upheld. (*Id.* at 46.)  Again, Plaintiff has not shown that he complied with the applicable deadlines.  Therefore, he has not properly exhausted his administrative remedies and, consequently, Liu should receive summary judgment.[8]

## ii. Defendant Tan

The Complaint asserts that Plaintiff was discharged from Allegiance Hospital on January 13, 2014, with a diagnosis of, among other things, gastrointestinal bleeding, secondary to ulcerative colitis, whereupon Plaintiff was

---

[8] Because any judgment against Plaintiff based on his failure to exhaust administrative remedies is not a determination on the merits, it should be entered without prejudice. *See, e.g., Bates v. Winn*, 2015 WL 5442633, at *1 (E.D. Mich. Sept. 1, 2015) (Stafford, M.J.) ("If judgment is entered against Bates because of a failure to exhaust administrative remedies, the judgment will not be on the merits, so dismissal of the case should be without prejudice.") (citing *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004)), *report and recommendation adopted at* 2015 WL 5590701 (Sept. 23, 2015) (Duggan, J.).

placed under the care of Dr. Tan at Duane Waters Health.  (DE 1 at ¶¶ 25-29.)
According to the Complaint, Dr. Tan noted that Plaintiff's ulcerative colitis was
not highly active and thus stopped Plaintiff's prescription for steroids on/about
January 17, 2014.  (*Id.* at ¶¶ 29-30.)  The sole claim against Tan asserts that he was
deliberately indifferent to Plaintiff's medical needs, in violation of the Eighth
Amendment, by "discontinuing certain medications prescribed by an outside
doctor, causing Plaintiff's already serious medical need to become worse than
before."  (DE 1 at ¶172) (capitalization standardized).

As Defendants note in their motion, Plaintiff did not file a grievance
pertaining to Tan's decision to change Plaintiff's medications.  In early January
2014, Plaintiff filed a grievance against "all JCF health Care staff, H.U.M.,
Doctors, Nurses, and Corizon" listing an occurrence date of December 30, 2013
and stating that he needed to see a specialist for ongoing "stomach, rectal, and anal
pain(s) . . . ."  (DE 26-1 at 23.)  That grievance, number JCF 2014-01-0059-12D1,[9]
was denied at Step I in late January 2014 because Plaintiff had been seen by a
gastroenterologist.  (*Id.* at 24.)  The grievance was also denied at Steps II and III
later in 2014.  (*Id.* at 18, 21.)  Notably, however, that grievance does not
specifically mention Tan and pertains to conduct predating when the Complaint
alleges that he began treating Plaintiff.

---

[9] In their motion, Defendants mistakenly cite this grievance as 14040059.  (DE 26
at 28-29.)

17

Similarly, grievance JCF 2014-05-1207-12F does not pertain to Tan.  In that grievance, which Plaintiff filed in May 2014, Plaintiff asserted again that he needed to see a specialist for pain, blood in his stool and to get his pain medications renewed.  (DE 26-1 at 17.)  The grievance does not list Tan by name and provides an incident date of May 16, 2014, well after the date the Complaint asserts Tan treated Plaintiff.  (*Id.*)  Thus, though Plaintiff unsuccessfully appealed the Step I denial (*id.* at 18) to Steps II and III (*id.* at 14, 16), that grievance cannot be used to support a conclusion that Plaintiff exhausted his administrative remedies as to Defendant Tan.  *See, e.g., Ford v. Martin,* 49 Fed. App'x. 584, 585 (6th Cir. 2002) ("Ford failed to exhaust the administrative remedies for his claims numbered 2-4. Although Ford provided copies of three grievances to the district court, these grievances did not raise the same issues as those asserted in the second, third, or fourth claims of Ford's § 1983 complaint. Hence, the district court properly dismissed the complaint.").

Plaintiff does not indicate in his response that other specific grievances pertain to Tan.  Therefore, the Court should grant summary judgment to Defendant Tan based upon Plaintiff's failure to exhaust his administrative remedies.

### iii.  Defendants Bergman and Coleman

Plaintiff contends in relevant part that in early January 2014 (the exact date is difficult to discern from the Complaint) Drs. Bergman and/or Coleman sent him from Allegiance Hospital to Duane Waters Health for an emergency colonoscopy. However, Duane Waters did not have the capability to perform that procedure, so Plaintiff was returned to prison without receiving treatment.  (DE 1 at 5-6, ¶1-4.) Plaintiff also alleges that Dr. Bergman denied Defendant Liu's request for Plaintiff to receive a colonoscopy in August 2014.  (*Id.* at ¶46.)[10]

For his causes of action against Bergman and Coleman, Plaintiff asserts in paragraphs 169-170 of his Complaint that Bergman, along with Defendant Liu, "showed negligence by not properly address [sic] Plaintiff's medical needs in a timely fashion[,] causing Plaintiff's serious medical issues to become worse and now permanent, showing deliberate indifference[,] an Eighth Amendment violation."  (*Id.* at 38-39.)  Paragraph 174 contends Dr. Coleman was deliberately indifferent, in violation of the Eighth Amendment, by "denying any type of medical treatment when Plaintiff's [sic] was sent to an outside hospital emergency room, leaving Plaintiff in severe pain.")  (*Id.* at 39.)[11]

---

[10] Plaintiff originally listed Dr. Coleman as the person who denied Defendant Liu's request, but he crossed out Coleman's name and wrote in Dr. Bergman's.  (DE 1 at 14.)

[11] Defendants assert in both their original motion (DE 26 at 20) and reply (DE 31 at 2) that Plaintiff has brought a claim against Dr. Bergman for failing to disclose the side effects of cyclosporine.  (DE 26 at 20.)  The Court is sympathetic to

As discussed previously, grievance JCF 2014-01-0059-12D1 cannot be deemed applicable to Plaintiff's claims against Defendants Bergman and/or Coleman because that grievance concerns treatment Plaintiff received/should have received prior to January 2014—when the Complaint alleges they improperly discharged him from Allegiance Hospital.  The subject matter of that grievance also does not facially pertain to any factual allegations in the Complaint against Defendants Bergman or Coleman.

Similarly, though it was appealed through Step III, the previously discussed grievance JCF 2014-05-1207-12F, which Plaintiff filed in May 2014, also does not seem to pertain to any of the causes of action against Defendants Coleman and/or Bergman.  Instead, that grievance asserted that Plaintiff needed to see a specialist for pain, blood in his stool and renewal of pain medication.  (DE 26-1 at 14-18.)

No properly exhausted grievances, in short, align with the allegations in the Complaint regarding either Bergman or Coleman.  Therefore, they each are entitled to summary judgment.  *Ford*, 49 Fed. App'x at 585.

### d.  Exhaustion as to Carlson and Xue

### i.  Factual Allegations and Causes of Action

---

Defendants' assertion because the handwritten Complaint is difficult to read. However, it is clear to the Court that Plaintiff actually brought that cyclosporine-based claim against Defendant William Borgerding.  (DE 1 at 39, ¶171.)   Since Defendant Borgerding is not a party to either pending motion, the Court will not discuss the cyclosporine claim further in this Report and Recommendation.

The factual portion of Plaintiff's Complaint regarding Defendants Carlson and Xue, who are each registered nurses as the Cotton Correctional Facility, is minimal.[12]   Plaintiff contends when he kited JCF healthcare in May 2014, Defendant Xue responded, stating only that Plaintiff had an appointment with a medical provider in about a week.  (DE 1 at 17, ¶60.)  Plaintiff asserts that his "issues should have been forwarded to the medical provider immediately."  (*Id.* at ¶62.)  Plaintiff next contends that in August 2014, Defendant Carlson refused to listen to Plaintiff explain his health issues/concerns; instead, Carlson took Plaintiff's vital signs and told him he was ok.  (*Id.* at ¶88-89.)[13]  Based on those allegations, Plaintiff asserts: Carlson was deliberately indifferent, in violation of the Eighth Amendment, by not properly checking Plaintiff's medical records (*id.* at

---

[12] Carlson and Xue executed waivers of service in early April 2016, which usually would have required them to file an answer or otherwise respond to the Complaint by late May 2016.  (DE 11, 12.)  However, unless directed to do so by the Court, defendants in PLRA actions are not obligated to file an answer.  *See, e.g., Boling v. Corrections Medical Service*, 2007 WL 2515222, at *1 (E.D. Mich. Aug. 31, 2007) (Pepe, M.J.) ("While the Court 'may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits,' 42 U.S.C. § 1997e(g)(2), until such time as this happens, none of the defendants in this matter are obligated to answer the complaint."); *Stevenson v. MDOC*, 2007 WL 1202310, at *1 (W.D. Mich. April 23, 2007) ("Section 1997e(g) bars plaintiff from obtaining an entry of default or a default judgment against any of the defendants, because defendants have no obligation to reply to the complaint until ordered by the court.").

[13] As Plaintiff accurately notes in his response, Carlson and Xue incorrectly mix up which factual allegations are against each of them in the statement of facts section of their motion.  *See* DE 35 at 7-8.

¶163); and Xue was deliberately indifferent, in violation of the Eighth Amendment, "by not checking or addressing properly the serious medical need for relief of pain or lack of care." (*Id.* at ¶173.)

## ii. Claims Against Xue are Exhausted

As to Defendant Xue, the question is whether grievance JFC-14-05-1207-12F is applicable to the allegations against her, since no other grievances are directly related to those claims. Because it is helpful in determining the exhaustion question, the Court will recite the Complaint's factual allegations against Xue in full:

> 60. On 5-16-14 Plaintiff again wrote another grievance against healthcare for lack of care and controlling Plaintiff's pain level, when Plaintiff kited JCF healthcare[,] Plaintiff was sent back a response by R.N. _____ Renyu, stating that Plaintiff had an up coming [sic] appointment with a medical provider in about a week.
>
> 61. RN _____ Renyu had access to Plaintiff's medical records or files per computer and being that Plaintiff made it very clear and specific detail of on going [sic] chronic care issues. [sic]
>
> 62. Plaintiff's issues should have been forwarded to the medical provider immediately, due to this [not having been done] Plaintiff was left in pain for almost 2 weeks and [the medication?] wasn't renewed until 5-20-14, the only reason Plaintiff was seen was because Plaintiff went for frequent blood pressure checks and had complained to daytime medical staff. [sic]

(DE 1 at 17) (capitalization standardized).

Grievance JFC-14-05-1207-12F was submitted on May 19, 2014, with an alleged incident date of May 16, 2014, and was directed at "all JCF Health Care

[sic] staff, H.U.M., Doctors, Nurses, and Corizon (specific names and titles are unavailable due to Grievant's inability to access personnel files)."  (DE 35-3 at 37.) The grievance alleges that on May 15, 2014, Plaintiff kited JCF healthcare personnel to request renewal of pain medication due to his ongoing severe pain, but received a response on May 19, 2014 telling him he had an appointment with a provider in a week, at which he should raise his concerns.  (*Id.*)  Plaintiff asserted in the grievance that he needed to see a specialist for pain and blood in his stool. (*Id.*)  The claim was denied on the merits (i.e., the denial was not based upon untimeliness or any other procedural irregularities) at Steps I (Doc. 38 at 8), II and III.  (DE 35-3 at 34-36.)  In fact, Plaintiff has attached to his response the May 16, 2014 kite response which spurred him to file that grievance (DE 35 at 12) and the May 15, 2014 kite itself.  (*Id.* at 13.)[14]  That kite response, which states only that it was written by "Renyu," does indeed state that Plaintiff "will have a chronic care appointment with a medical provider coming up in about a week.  Please discuss your requests in the appointment."  (*Id.*)

---

[14] Defendants did not file a reply brief so there is no reason for the Court to doubt the authenticity of either the kite or the response thereto provided by Plaintiff. Moreover, when ruling on a motion for summary judgment the Court must construe the facts in the light most favorable to the nonmovant.  For purposes of ruling on the summary judgment motion, therefore, the Court will deem the kite and the response thereto attached to Plaintiff's brief to be accurate copies of what they purport to be.

Contrary to the assertions in her motion for summary judgment, grievance JFC-14-05-1207-12F is unmistakably, directly related to the Complaint's allegations concerning Xue's declining to send Plaintiff directly to a medical provider in May 2014.  Indeed, Xue's response to Plaintiff's kite immediately preceded, and was the impetus for, the filing of that grievance.

It is plain that, as previously discussed, Paragraph R of the relevant MDOC grievance policy requires a grievance to include the "names of all those involved in the issue being grieved . . . ."  (DE 35-2 at 4.)  Grievance JFC-14-05-1207-12F nonetheless does not list the specific names of any healthcare provider respondents.  Since Xue responded to the kite which immediately preceded the grievance, Plaintiff knew her name (or should have known her name) and, consequently, should have listed her specifically as a respondent in that grievance.  However, the MDOC elected to respond to the grievance on the merits at all three steps instead of enforcing the specificity requirements of Paragraph R.  Because the MDOC did not enforce Paragraph R, neither should this Court.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-326 (6th Cir. 2010).[15]  Indeed, this Court has held

_____

[15] In relevant part, the Sixth Circuit held in *Reed-Bay* as follows:

> Reed-Bey's appeal presents one question: Did he properly exhaust his administrative remedies despite failing to name a single individual in his initial grievance? If not, the PLRA bars his claim. . . .

24

Under the Department of Corrections' procedural rules, inmates must include the "[d]ates, times, places and names of all those involved in the issue being grieved" in their initial grievance.  These rules suggest a straightforward answer to the question presented-"No"-because Reed-Bey did not identify the "names of all those involved in the issue being grieved."

But this case comes with a twist. Officials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) this procedural failing and chose to address Reed-Bey's grievance on the merits. That makes a difference. The point of the PLRA exhaustion requirement is to allow prison officials "a fair opportunity" to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court. Requiring inmates to exhaust prison remedies in the manner the State provides-by, say, identifying *all* relevant defendants-not only furthers these objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process.

Yet the equation changes when the State does not enforce its own rules. When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we. In that setting, the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar? . . .

We see no benefit to enforcing a procedural bar that the Department of Corrections did not. We instead conclude that Reed-Bey properly exhausted his claim because he invoked one complete round of the Department's grievance procedures and received merits-based responses at each step.

603 F.3d at 624-626 (citations and paragraph break omitted)

25

in an extremely similar situation that merely listing "health care" on a grievance form was sufficient since the MDOC addressed the grievance on the merits. *See, e.g., Burton v. Kakani*, 2009 WL 3101046, at * 2-3 (E.D. Mich. Sept. 23, 2009) (Battani, J.).[16]  In other words, the responses on the merits to the grievance at all

---

[16] Specifically, in *Burton* Judge Battani concluded:

> The Magistrate Judge found that Burton exhausted his administrative remedies because although his grievance did not provide Defendants' names, it "gave Defendants fair notice of the claims against them, by supplying sufficient information for the prison to identify Defendants as the persons being grieved."
>
> Burton's grievance indicated that he had "kited Health Care regarding a serious medical need" on April 22, June 10, and June 25, 2008. In addition, his grievance indicated that "the P.A." and "the Doctor" were deliberately indifferent to his medical need. As the Magistrate Judge noted, Defendants have not alleged that any PA or doctor, other than Defendants, were assigned to the prison at the time. Furthermore, the step one and step two responses to Burton's grievance show that prison officials identified the PA and the doctor.
>
> Furthermore, to the extent that MDOC Policy Directive 03.02.130(R) can be read to bar grievances that provide sufficient information to allow easy identification of the individuals being grieved but fail to provide the individuals' names, the Court finds that such a requirement is not "critical" and, therefore, compliance with that requirement is not necessary for exhaustion under the PLRA. *See Woodford,* 548 U.S. at 90 (indicating that proper exhaustion demands compliance with an agency's "critical procedural rules"). *Thus, because Burton's grievance provided sufficient information based upon which the prison could easily identify the individuals being grieved, it served to exhaust Burton's claims against those individuals despite the fact that the individuals' names were not included in the*

26

three levels indicate that Xue had fair notice that she was among the subjects of the grievance.  Because grievance JFC-14-05-1207-12F pertains to the allegations in the Complaint against Xue, was pursued at all three administrative steps by Plaintiff, and was addressed on the merits at all three administrative steps, the Court should deny Xue's motion for summary judgment.[17]

### iii.  Claims Against Carlson Are Not Exhausted

Carlson argues that there are no grievances pursued through Step III which pertain to the allegations in the Complaint against her.  Carlson appears to be correct.  Rather than pointing to specific, properly exhausted grievances in his

---

*grievance.* Accordingly, Defendants' argument that Plaintiff failed to properly exhaust his administrative remedies fails.

2009 WL 3101046, at *2-3 (citations omitted and emphasis added).  *See also, e.g., Taylor v. Holmes*, 2009 WL 2170250, at *5 (W.D. Mich. July 21, 2009) ("Here, Plaintiff failed to identify *any* individual by name in his grievances, instead asserting his grievances against 'health care.' This certainly put prison officials on notice that Plaintiff failed to comply with the relevant procedural rule. Prison officials certainly could have rejected Plaintiff's grievance for failing to identify by name the 'staff' members in question. Prison officials, however, declined to enforce this procedural rule against Plaintiff. Defendants cannot now seek to enforce the procedural rule in question.").

[17] Though Plaintiff seems to argue that grievance JFC-14-05-1207-12F also applies to his claims against Defendant Carlson (DE 38 at 2), there is no indication from the grievance or the Complaint that Carlson was involved in the May 2014 events undergirding that grievance.  Thus, the Court should not construe that grievance as applying to the claims against Carlson.

27

response, Plaintiff instead contends the claims against Carlson were exhausted under the continuing violation theory.  (DE 38 at 3.)

The continuing violation theory has sometimes been used to find that incarcerated Plaintiffs have exhausted their administrative remedies.  *See, e.g., Ellis v. Vadlamudi*, 568 F.Supp.2d 778 (E.D. Mich. 2008) (Lawson, J.) (the only continuing violation case cited by Plaintiff).  However, the continuing violation theory in *Ellis* focuses on whether the prison grievances were timely filed, not on whether they could be construed to encompass a person not directly named therein.  *See* 568 F.Supp.2d at 783-784 ("For an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and therefore the time of the Eighth Amendment violation) can be determined with some precision, and therefore the time limit for filing a grievance can be readily established. Such is not the case for a chronic medical condition that is ignored, or for which treatment is delayed or inadequate.").  *See also Siggers*, 652 F.3d at 692-693.  This Court has made plain that the continuing violation doctrine applies only to timeliness issues in cases involving chronic conditions, holding, "[i]n cases involving a failure to treat such a chronic condition, the courts have held that prison officials may not parse for timeliness each individual treatment decision."  *McAdory v. Engelsgjerd*, 2010 WL 1131484, at *4 (E.D. Mich. Feb. 11, 2010) (Komives, M.J.) (citing

28

*Ellis*), *report and recommendation adopted at* 2010 WL 1132548 (E.D. Mich.

March 23, 2010) (O'Meara, J.).

The untimeliness of Plaintiff's grievances are not the basis for Carlson's

motion for summary judgment. Accordingly, the continuing violation doctrine is

inapplicable--even if the Court assumes, solely for purposes of argument, that

Plaintiff suffers from an ongoing medical condition. *Vartinelli v. Cady*, 2009 WL

706083, at *3 (E.D. Mich. March 13, 2009) (Battani, J.) ("Vartinelli also argues

that the Magistrate Judge erred because his claims relate to an ongoing medical

condition. He relies on *Ellis* . . . to support his position that failure to exhaust

defense must be rejected. The Court finds that *Ellis* provides no basis to reject the

R & R. It addresses the timeliness of a grievance raising an ongoing medical

condition, not the requirement to name defendants.") (paragraph break omitted).

Accordingly, Carlson's motion for summary judgment should be granted.

## III.   CONCLUSION

For the foregoing reasons, the Undersigned recommends that the Court

**GRANT** the construed Motion for Summary Judgment filed by Defendants Liu,

Tan, Coleman, and Steven Bergman (DE 26); and **GRANT** the motion for

summary judgment filed by Defendant Carlson (DE 35) but **DENY** summary

judgment to Defendant Xue. (DE 35.)

## IV.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 23, 2017          s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on January 23, 2017, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti

31