UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE HOOSIER,

    Plaintiff

v.

WENDY LIU, KAREN RHODES, VICKI CARLSON WILLIAM BORGERDING, RENYU XUE, BADAWI ABDELLATIF, KIM FARRIS, SHI-YU TAN, RICKEY COLEMAN, STEVEN BERGMAN, LPN SEARS,

    Defendants.
_____/

Case No. 2:16-10688
District Judge Denise Page Hood
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT MDOC DEFENDANT BORGERDING'S MOTION FOR SUMMARY JUDGMENT (DE 46)

**I. RECOMMENDATION:** Because Plaintiff failed to exhaust his administrative remedies, the Court should **GRANT** the motion for summary judgment filed by Defendant William Borgerding, D.O. (DE 46.)

**II. REPORT**

    **A. Background**

    Plaintiff, Dwayne Hoosier, a state prisoner who is proceeding *pro se*, brought this lawsuit under 42 U.S.C. § 1983, alleging claims of deliberate indifference to his medical needs, in violation of the Eighth Amendment, as well as

claims based on the Americans with Disabilities Act ("ADA"), the Rehabilitation Act and the Federal Tort Claims Act. (DE 1.) He names eleven Defendants, all of whom are medical professionals involved in his treatment for ulcerative colitis and Raynaud's disease.[1]

With regard to Dr. Borgerding, Plaintiff's Complaint alleges that he was informed on May 28, 2014 that Dr. Borgerding decided to place Plaintiff on a series of different intravenous medications. (DE 1 ¶¶ 69-70.) Sometime after June 24, 2014, Dr. Borgerding placed Plaintiff on the drug cyclosporine, and Plaintiff was informed that the doctor wanted Plaintiff to try it for several weeks. (*Id.* ¶¶ 79-81, 84.) Plaintiff was on cyclosporine for about a month, but complains that Dr. Borgerding never checked to determine what interactions that drug would have with his current medications. (*Id.* ¶¶ 85-86.) Plaintiff claims that the cyclosporine caused several side effects and that he continued to complain about those side effects until he passed out on August 24, 2014 and requested to see healthcare. (*Id.* ¶ 87.) Plaintiff claims that he now has "a life long illness called Raynaud's phenomenon which is a cause [sic] from the beta blockers and cyclosporine." (*Id.* ¶ 95.) Plaintiff alleges that Dr. Borgerding "showed deliberate indifference *by*

---

[1] On February 15, 2017, the Court entered an Order accepting my January 23, 2017 Report and Recommendation, and dismissing Plaintiff's claims against Defendants Shi-Yu Tan, Rickey Coleman, Steven Bergman and Vicki Carlson, and some of Plaintiff's claims against Defendant Wendy Liu, for failure to properly exhaust administrative remedies, but denying Defendant Renyu Xue's motion for summary judgment. (DE 42, adopting DE 40.)

2

*failing to inform Plaintiff of adverse consequences* of medications (cyclosporine) adding to Plaintiff's already serious medical needs [and] causing Plaintiff's health to diminish more even after Plaintiff continuously complained about side effects violating Plaintiff's Eight Amendment [rights]." (*Id.* ¶ 171 (emphasis added).)[2]

In March 2016, Chief Judge Hood referred all pretrial matters to me, including preparing a report and recommendation on all dispositive motions. (DE 8.)

### B. The Instant Motion

In March 2017, Dr. Borgerding, the Assistant Chief Medical Officer for the Michigan Department of Corrections (MDOC), filed a motion for summary judgment, arguing that Plaintiff's claims against him should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing this action, as is required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. §

---

[2] Plaintiff's claims involve his treatment for ulcerative colitis and Raynaud's disease. Ulcerative colitis is "a chronic inflammatory disease of the colon that is of unknown cause and is characterized by diarrhea with discharge of mucus and blood, cramping abdominal pain, and inflammation and edema of the mucous membrane with patches of ulceration[.]" https://www.merriam-webster.com/dictionary/ulcerative%20colitis#medicalDictionary (last visited October 30, 2017). Raynaud's disease is "a vascular disorder that is marked by recurrent spasm of the capillaries and especially those of the fingers and toes upon exposure to cold, that is characterized by pallor, cyanosis, and redness in succession usually accompanied by pain, and that in severe cases progresses to local gangrene[.]" https://www.merriam-webster.com/medical/Raynaud's%20disease (last visited October 30, 2017).

3

1997e(a). (DE 26.) Dr. Borgerding states that Plaintiff has filed six Step III grievances while incarcerated, but none of those grievances exhaust any claims against him. (*Id.*)

Plaintiff opposes the motion. He argues that he did exhaust his administrative remedies as to his claims against Dr. Borgerding through Grievance JCF-14-01-0059-12d1, dated 1/3/14, because he wrote that grievance against "all JCF health Care staff, H.U.M., Doctors, Nurses and Corizon (specific names and titled are unavailable due to Grievant's inability to access files)." (DE 56 at 2, 7.) Plaintiff asserts in his response that Dr. Borgerding has been making decisions regarding Plaintiff's care since the first grievance was written, but Plaintiff did not know his name because he did not have access to the files. (*Id.* at 3.) Plaintiff asserts that Dr. Borgerding was the acting Chief Medical Doctor "which places [him] in line to be held accountable as to the distance of the ongoing continuous violation of an ongoing health care issue." (*Id.* at 4.)

### C. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence,

4

all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 Fed. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville and Davidson Cnty.*, 432 Fed. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary

judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### D. Discussion

#### 1. Exhaustion of Administrative Remedies

##### a. Exhaustion Under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones*, 549 U.S. at 203. Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

### b. Grievance Procedures at the MDOC

Pursuant to its Policy Directive 03.02.130, dated July, 9, 2007, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve any issue with the staff member involved within two business days of becoming aware of a grievable issue. (DE 35-2, ¶P.) If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*) "Dates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* at ¶R.) The inmate should receive a response within fifteen business days of filing the grievance. (*Id.* at ¶X.)

If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at ¶ BB.) As with Step I, a response to the Step II grievance should be issued within fifteen business days. (*Id.* at ¶CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the response was due, he or she may file a Step III grievance. (*Id.* at ¶ FF.) The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### 2. Plaintiff Failed to Exhaust His Administrative Remedies against Dr. Borgerding

#### a. The Grievances Did Not Give Dr. Borgerding Notice of the Claims Against Him

Dr. Borgerding contends that Plaintiff failed to exhaust his administrative remedies as to all claims against him. Dr. Borgerding acknowledges that Plaintiff has filed six Step III grievance appeals while incarcerated (DE 46 at 13-15, referring to DE 35-3), but contends that none of these Grievances relate to Plaintiff's claims that Dr. Borgerding made the decision to place Plaintiff on the drug cyclosporine around June 24, 2014, and that he did not inform Plaintiff of the adverse consequences of the medication, allegedly "causing Plaintiff's health to diminish more even after Plaintiff continuously complained about side effects violating Plaintiff's Eight Amendment [rights]." (DE 46 at 7-8, 14-15; DE 1 at ¶¶ 79-80, 171.) Indeed, review of the Grievances filed reveals that they relate to the following:

(1) **JCF-15-03-0626-28e**: Plaintiff was improperly transferred out of JCF Correctional Facility to MRF on February 12, 2015 (denied as untimely at Step II);

(2) **JCF-15-03-0627-28e**: Defendant Liu sent an improper email regarding Plaintiff to MRF on February 12, 2015 (denied as untimely at Step II);

(3) **JCF-15-02-0468-28e**: Plaintiff was not given permission to attend his mother's funeral on February 6, 2015 (denied as untimely at Step II);

(4) **JCF-15-01-0189-28e**: Defendant Liu changed Plaintiff's medical details without consulting a Medical Provider on January 16, 2015;

9

> (5) **JCF-14-05-1207-12f**: Plaintiff needed to see a specialist for pain, blood in his stool and to get his pain medications renewed in May 2014; and
>
> (6) **JCF 14-01-0059-12d1**: Plaintiff suffered from stomach, rectal and anal pains since August 2013 and needed to see a specialist, filed January 3, 2014.[3]

(DE 46 at 13-15, referring to DE 35-3). None of these Grievances mention Dr. Borgerding or relate to the allegations in the Complaint regarding his placing Plaintiff on the drug cyclosporine from June to August 2014, or the failure to inform Plaintiff of the adverse consequences of that medication; they accordingly fail to exhaust Plaintiff's administrative remedies as to his claims against Dr. Borgerding. *See, e.g., Ford v. Martin,* 49 Fed. App'x. 584, 585 (6th Cir. 2002) ("Ford failed to exhaust the administrative remedies for his claims numbered 2-4. Although Ford provided copies of three grievances to the district court, these grievances did not raise the same issues as those asserted in the second, third, or fourth claims of Ford's § 1983 complaint. Hence, the district court properly dismissed the complaint.").

Plaintiff argues in response that he did exhaust his administrative remedies as to his claims against Dr. Borgerding through Grievance JCF-14-01-0059-12d1, dated 1/3/14, because he wrote that Grievance against "all JCF health Care staff,

---

[3] These medical conditions are hereinafter referred to as "gastrointestinal issues," as the large intestine includes both the rectum and the anus. *See Wikipedia*, Large Intestine, https://en.wikipedia.org/wiki/Large_intestine.

10

H.U.M., Doctors, Nurses and Corizon (specific names and titled are unavailable due to Grievant's inability to access files)." (DE 56 at 2, 7.) Plaintiff further argues that the MDOC policy "does not require the naming of individuals" in the grievance for purposes of exhaustion of administrative remedies. (DE 56 at 3.) However, as explained above, Paragraph R of the relevant MDOC grievance policy does require a grievance to include the "names of all those involved in the issue being grieved…." (DE 35-2 at 4.) While some courts have found that a generalized referral to "health care services," in combination with specific recitations of the date(s) and other identifying information, such as reference to specific kites, may be sufficient to identify the target(s) of the grievance for purposes of exhaustion, even if those individual defendants are not named in the grievance, *see, e.g., Burton v. Kakani*, No. 09-10893, 2009 WL 3101046, at *2-3 (E.D. Mich. Sept. 23, 2009), others have found that a broad reference to "health care staff," without more specific allegations in the grievance regarding the defendants, is insufficient is exhaust administrative remedies as to particular defendants. *See, e.g., Solomon v. Mich. Dept. of Corrs.*, No. 2:10-CV-59, 2011 WL 4479300, at *3 (W.D. Mich. Aug. 31, 2011) *report and recommendation adopted* by 2011 LW 4479407 (Sept. 27, 2011).

    Plaintiff asserts in his response that Grievance JCF-14-01-0059-12d1 exhausts his claims against Dr. Borgerding because Dr. Borgerding "has been

11

making decisions on the care of [P]laintiff since the first grievance was written," but Plaintiff did not know his name because he did not have access to the files. (DE 56 at 3.) Plaintiff further argues in his response that Dr. Borgerding was the "acting chief medical DR., which places [him] in line to be held accountable as to the distance of the ongoing continuous violation of an ongoing health care issue." (*Id.* at 4.) However, Plaintiff does not claim in his Complaint that Dr. Borgerding was responsible for "making decisions regarding Plaintiff's care since the first grievance was written," that he failed to refer Plaintiff to a specialist for gastro-intestinal issues (see Grievance JCF-14-01-0059-12d1), or otherwise claim Dr. Borgerding was generally responsible for Plaintiff's claimed ongoing health care issues. Rather, he instead alleges that Dr. Borgerding showed deliberate indifference *with regard to placing Plaintiff on the drug cyclosporine* on or around June 24, 2014, and for *not informing him of the adverse consequences of the drug* sometime before August 24, 2014. (DE 79-80, 87, 171.) I will only consider the claims actually made in Plaintiff's Complaint regarding Dr. Borgerding. *See Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 958, 970 (6th Cir. 2007) (affirming the district court disregarding claims raised for the first time in a motion for summary judgment). Plaintiff is "the master of his complaint," and thus, the Court looks to the pleadings to define his claims. *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). Regardless of whether Dr. Borgerding fell

12

within the ambit of those medical professionals against whom Grievance JCF-14-01-0059-12d1 was alleged, and regardless of whether Plaintiff's generalized references to "health care staff" could have put Dr. Borgerding on notice of *some claim*, the allegations made in that Grievance do not match (or even nearly match) the allegations made against him in this lawsuit.

Moreover, there are other reasons why a generalized reference to "health Care staff, H.U.M., doctors, Nurses, and Corizon" in a Grievance regarding Plaintiff's requests to see a specialist "since August 2013," was insufficient to put Dr. Borgerding on notice that he was a target of the Grievance regarding Plaintiff's claims against him. Grievance JCF-14-01-0059-12d1 is dated January 3, 2014, more than six months before Plaintiff alleges that Dr. Borgerding made the decision to place Plaintiff on cyclosporine in June 2014. (DE 35-3 at 44.) The Grievance in question was denied at Step I in late January 2014 because Plaintiff had been seen by a gastroenterologist. (*Id.* at 45.) The Grievance was also denied at Steps II and III later in 2014. (*Id.* at 39, 42.) Notably, however, neither the Grievance, nor any responses, mention Dr. Borgerding or relate at all to Plaintiff's allegations regarding Dr. Borgerding in the Complaint. The Grievance relates solely to conduct predating when the Complaint alleges Dr. Borgerding

13

treated Plaintiff.[4] Accordingly, Grievance JCF-14-01-0059-12d1 did not serve to exhaust Plaintiff's claims against Dr. Borgerding regarding placing Plaintiff on cyclosporine between June and August 2014.

### b. Plaintiff's Claims are not Saved under the Continuing Violation Theory

---

[4] In my January 23, 2017 Report and Recommendation in this case, which was adopted on February 15, 2017 (DE 42), I found that Grievance JCF-14-05-1207-12F properly exhausted Plaintiff's claims against Defendant Xue, even though the Grievance was directed to "all JCF Health Care [sic] staff, H.U.M., Doctors, Nurses, and Corizon (specific names and titles are unavailable due to Grievant's inability to access personnel files)," but did not directly name Xue. (DE 40 at 22-27.) However, the allegations of that Grievance directly related to Plaintiff's claims against Xue in his Complaint. And moreover, that Grievance specifically referred to a kite dated May 15, 2014, and a response to that kite dated May 19, 2014. (DE 40 at 23, referring to DE 35-3 at 37.) Plaintiff submitted a copy of the May 15, 2014 kite and the May 19, 2014 kite response, and the kite response states that it was written by "Renyu" [Xue]. (DE 40 at 23, referring to DE 35 at 12-13.) I found that "[G]rievance JCF-14-05-1207-12F is unmistakenly, directly related to the Complaint's allegations concerning Xue's declining to send Plaintiff directly to a medical provider in May 2014. Indeed, Xue's response to Plaintiff's kite immediately preceded, and was the impetus for, the filing of that grievance." (DE 40 at 24.) I noted that although Plaintiff should have known Xue's name to include as a respondent on the Grievance, because the MDOC did not enforce Paragraph R, neither should the Court. (*Id.*) Because the Grievance pertained to the allegations in the Complaint against Xue, and the responses on the merits to the Grievance at all levels indicate that Xue (who responded to the kite identified in the Grievance) had fair notice that she was among the subjects of the Grievance, I recommended that the Court deny Xue's motion for summary judgment. (*Id.* at 40.) Conversely, the allegations in Grievance 14-01-0059-12d1 do not pertain to the allegations in the Complaint against Dr. Borgerding, and there is nothing to indicate that Dr. Borgerding would or did in fact have fair notice that he was among the subjects of that Grievance.

14

Plaintiff also contends his claims against Dr. Borgerding were exhausted under the continuing violation theory. (DE 56 at 3.) The continuing violation theory has sometimes been used to find that incarcerated plaintiffs have exhausted their administrative remedies. *See, e.g., Ellis v. Vadlamudi*, 568 F.Supp.2d 778 (E.D. Mich. 2008) (Lawson, J.) (the only continuing violation case cited by Plaintiff). However, the continuing violation theory in *Ellis* focuses on whether the prison grievances were timely filed, not on whether they could be construed to encompass a person not directly named therein. *See* 568 F.Supp.2d at 783-84 ("For an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and therefore the time of the Eighth Amendment violation) can be determined with some precision, and therefore the time limit for filing a grievance can be readily established. Such is not the case for a chronic medical condition that is ignored, or for which treatment is delayed or inadequate."). *See also Siggers v. Campbell*, 652 F.3d 681, 692-93 (6th Cir. 2011). This Court has made plain that the continuing violation doctrine applies only to timeliness issues in cases involving chronic conditions, holding, "[i]n cases involving a failure to treat such a chronic condition, the courts have held that prison officials may not parse for timeliness each individual treatment decision." *McAdory v. Engelsgjerd*, No. 5:07-CV-13192, 2010 WL 1131484, at *4 (E.D. Mich. Feb. 11, 2010) (citing

15

*Ellis*), *report and recommendation adopted at* 2010 WL 1132548 (E.D. Mich. Mar. 23, 2010).

The untimeliness of Plaintiff's Grievances are not the basis for Dr. Borgerding's motion for summary judgment. Accordingly, the continuing violation doctrine is inapplicable, even if the Court assumes, solely for purposes of argument, that Plaintiff suffers from an ongoing medical condition, such as the gastrointestinal problems alleged in Grievance JCF-14-01-0059-12d1. *Vartinelli v. Cady*, No. 07-12388, 2009 WL 706083, at *3 (E.D. Mich. Mar. 13, 2009) ("Vartinelli also argues that the Magistrate Judge erred because his claims relate to an ongoing medical condition. He relies on *Ellis* . . . to support his position that failure to exhaust defense must be rejected. The Court finds that *Ellis* provides no basis to reject the R & R. It addresses the timeliness of a grievance raising an ongoing medical condition, not the requirement to name defendants.") (paragraph break omitted).

Plaintiff does not indicate in his response that other specific grievances pertain to Dr. Borgerding. In addition, no properly exhausted grievances align with the allegations in the Complaint regarding Dr. Borgerding. Therefore, the Court should grant summary judgment to Defendant Borgerding based upon Plaintiff's failure to exhaust his administrative remedies.

### III. CONCLUSION

For the foregoing reasons, the Undersigned recommends that the Court **GRANT** Defendant William Borgerding, D.O.'s Motion for Summary Judgment. (DE 46.)

### IV. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: **October 30, 2017**  s/**Anthony P. Patti**
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on October 30, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti