UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE HOOSIER,

               Plaintiff

v.

WENDY LIU, *et al.*,

               Defendants.

_____/

Case No. 2:16-10688
District Judge Denise Page Hood
Magistrate Judge Anthony Patti

**REPORT AND RECOMMENDATION TO GRANT THE MOTION FOR
SUMMARY JUDGMENT FILED BY MDOC DEFENDANTS RENYU XUE
AND HELEN SEARS (DE 80)**

## I.    RECOMMENDATION

For the reasons set forth below, the Court should **GRANT** the Motion for
Summary Judgment filed by MDOC Defendant Renyu Xue and Helen Sears.  (DE
80.)

## II.    REPORT

### A.    Relevant Facts

In February 2016, Plaintiff Dwayne Hoosier, a state prisoner who is
proceeding *in pro per*, brought this lawsuit under 42 U.S.C. § 1983.  (DE 1.)  In
March 2016, Chief Judge Hood referred all pretrial matters to me, including
preparation of a report and recommendation on all dispositive motions.  (DE 8.)

Hoosier's allegations are set forth in his verified Complaint.  (DE 1 at 40 ("I declare, or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.").)  He alleges claims of deliberate indifference to his medical needs in violation of the Eighth Amendment, as well as claims based on the American with Disabilities Act and the Federal Tort Claims Act.  (*Id.*)  He names eleven Defendants, all of whom are medical professionals involved in his treatment for ulcerative colitis and Raynaud's disease.  (DE 1.)  He sues all Defendants in their individual and official capacities for monetary damages and declaratory relief.  (*Id.*)

Renyu Xue is employed at G. Robert Cotton Correctional Facility ("Cotton Facility") as a Registered Nurse.  (DE 80 at 8.)  Helen Sears is employed at the Charles E. Egeler Reception and Guidance Center ("Egeler Center") as a Licensed Practical Nurse.  (*Id.*)  The Cotton Facility and Egeler Center are both operated by the Michigan Department of Corrections ("MDOC").

By way of background, Hoosier was originally diagnosed with ulcerative colitis on January 12, 2014.  (DE 1 at 5.)  A colonoscopy was performed.  (*Id.* ¶ 20.)  The week before, he had been brought to the hospital three times for severe pain and blood loss apparently associated with the colitis.  (*Id.* ¶¶ 6, 9, 16–19 (January 7, 10, and 11).)  After the colonoscopy, Hoosier was prescribed numerous medications (*Id.* ¶ 23) and advised to visit "a gastrointestinal clinic at the prison on a regular basis" (*Id.* ¶ 24.)  He was also told that his colitis was "mild to moderate at the time and

could be controlled if treated properly with steroids and other medications." (*Id.* ¶ 31.) But he would not be put on steroids until September 2014. (*Id.* ¶ 67.) And he would not be given approval to see a gastrointestinal specialist until November 2014. (*Id.* ¶ 93.)

Soon after this January 2014 diagnosis, the hospital sent Hoosier to Dwayne Waters Health, where he received pain medication. (*Id.* ¶ 28–30.) But once he arrived at Cotton Facility (where Xue works), he was given Tylenol. (*Id.* ¶ 33.) He experienced blood loss, dizziness, pain, cramps, and incontinence every day. (*Id.* ¶¶ 34–36, 53.) In February 2014, the prison sent Hoosier to the hospital based on an analysis of his vital signs, which led to a blood transfusion. (*Id.* ¶¶ 38–44.) Then, the routine repeated itself: the hospital sent Hoosier to Dwayne Waters Health, which eventually discharged him to Cotton Facility, where he was given Tylenol. (*Id*. ¶¶ 44.) And he returned to the hospital once again in March 2014, where he received a second colonoscopy. (*Id.* ¶¶ 47–49.) Plaintiff is currently still suffering from incontinence and depression. (*Id.* ¶¶ 53–59.) By the end of 2014, he would be sent to the hospital at least twenty times and be given at least three colonoscopies. (*Id.* ¶ 67.) He would develop Reynaud's disease. (*Id.* ¶ 95.)[1] He alleges that what could have been a temporary condition has become a "lifelong illness." (*Id.*)

---

[1] Ulcerative colitis is "a nonspecific inflammatory disease of the colon of unknown cause characterized by diarrhea with discharge of mucus and blood, cramping abdominal pain, and inflammation and edema of the mucous membrane with patches

Relative to other allegations, the factual portion of Plaintiff's Complaint regarding MDOC Defendants Xue and Sears is short.  He alleges that Xue inadequately responded to a May 2014 kite in which he complained about his "lack of care" and "pain level."  ( *Id.* ¶ 60–62.)  Xue responded that Plaintiff had an upcoming appointment with a medical provider.  (*Id.* ¶ 60; DE 80 at 8.)  Hoosier argues that his kite was "very clear and specific" about his chronic medical issues and that Xue "had access to Plaintiff's medical records or files," so it "should have been forwarded to the medical provider immediately."  (DE 1 at 17 ¶ 61–62.) Instead, he was in pain for nearly two extra weeks, and when he was finally seen by a medical provider, his medication was "immediately" ordered.  (*Id.* ¶ 62–63.)  For context, this was the same month that Hoosier received two additional blood transfusions.  ( *Id.* ¶ 71.)

Shortly after the blood transfusions, in early June 2014, Hoosier received an intravenous infusion (*a.k.a.*, I.V. drip).  ( *Id.* ¶ 73.)  But his pain medications were stopped mid-month for unknown reasons.  (*Id.*)  Hoosier alleges that Sears, who was originally identified in the Complaint as "Jane Doe," failed to provide him with

---

of ulceration[.]" MERRIAM-WEBSTER DICTIONARY, "ulcerative colitis" (last visited December 10, 2018).  Raynaud's disease is "a vascular disorder that is marked by recurrent spasm of the capillaries and especially those of the fingers and toes upon exposure to cold, that is characterized by pallor, cyanosis, and redness in succession usually accompanied by pain, and that in severe cases progresses to local gangrene[.]" MERRIAM-WEBSTER DICTIONARY, "Raynaud's disease" (last visited December 10, 2018).

enough pain medication during this time.  (*Id.* ¶ 74–78.)  He says that he complained "on several occasions" that he was experiencing "a great deal of pain and that the pain medication wasn't doing anything."  (*Id.* ¶ 75.)  He assumed that he was being given the maximum dosage, and Sears did not tell him otherwise.  (*Id.* ¶ 76–77.)  However, Hoosier was eventually informed by a registered nurse that Sears had only been giving him a half-dosage of pain medication.  (*Id.* ¶ 78.)

## B.   Instant Motion

Although Xue previously filed a motion for summary judgment based on an alleged failure to exhaust administrative remedies (DE 35), the Court denied this motion, but permitted each party to file one additional motion for summary judgment on the merits (DE 73).  *Cf.* E.D. Mich. Local Rules (LR7.1 "A party must obtain leave of court to file more than one motion for summary judgment.").

Accordingly, MDOC Defendants Xue and Sears bring this motion under Rule 56 asking the Court to grant summary judgment in their favor.  Both argue that Plaintiff cannot establish the objective and subjective halves of a deliberate indifference claim.   Additionally, both argue that MDOC officials are entitled to Eleventh Amendment immunity when they are sued in their official capacities.  Alternatively, both argue that MDOC officials are entitled to qualified immunity, even if sued in their individual capacity, when their conduct meets a three-part test.

In his response, Hoosier repeats his allegations that Xue failed to elevate his kite to a medical provider in May 2014 and that Sears failed to give him full doses of pain medication in June 2014. (DE 86 at 1–7.)  Unfortunately, he appears to conflate Eleventh Amendment immunity and qualified immunity. (DE 86 at 8.) Under a heading about Eleventh Amendment immunity, he writes, "'Qualified immunity only applies to officials sued in their individual capacities for money damages[;] it does not protect municipalities or officials sued in their official capacities.' *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166–167 . . . ." (*Id.*)  He notes that he has sued the Defendants in both capacities. (*Id.*)  He also appears to point to an exception, adding that "some courts have held that officials who exceed their discretion are not entitled to qualified immunity," but cites nonbinding precedent from the 11th and 8th Circuits and the District of Wisconsin. (*Id.*)

With respect to procedure, Defendants argue that Plaintiff's response was untimely and that his Attachment A (DE 86 at 13–17) contains improper summary judgment evidence as it is inadmissible hearsay.   (DE 88 at 2.)  With respect to substance, Defendants argue that Plaintiff has failed to establish deliberate indifference, failed to contest Defendants' entitlement to Eleventh Amendment immunity, and failed to refute Defendants' entitlement to qualified immunity. (DE 88 at 1–5.)

6

### C.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no *genuine dispute* as to any *material fact* and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). A fact is "material" if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute cannot be "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted). But "[o]nce the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). And the nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The

7

nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

To that end, any party asserting that a fact is or is not "genuinely disputed must support their assertion by (A) citing to particular parts of materials in the record, including . . . affidavits or declarations, . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute" of fact, or showing that the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A cited affidavit or declaration must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. *Id.* at 56(c)(4). While unsworn declarations generally cannot be used to support or oppose a motion for summary judgment, there is a statutory exception. *Pollock v. Pollock*, 154 F.3d 601, n.20 (6th Cir. 1998); 28 U.S.C. § 1746. Unsworn declarations can substitute for a conventional affidavit if the statement contained in the declaration is made under penalty of perjury, certified as true and correct, signed and dated. *Id.*

Ultimately, summary judgment is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge.")  Courts must view "all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys. v. Mt. Hawley Ins.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

Finally, the fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002)] and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

### D.    Analysis

#### 1.    Procedural Issues

Plaintiff's response to Defendants' instant motion was filed on October 15, ten days after it was due.  (*See* DEs 84, 86.)  However, "a district court has broad discretion to manage its own docket," such that the court may choose to accept a tardy motion for summary judgment.  *American Civil Liberties Union of Ky. v. McCreary County, Ky.,* 607 F.3d 439, 451 (6th Cir. 2010).  Defendants have not

cited any authority suggesting that Plaintiff's response should be ignored, nor have they demonstrated or indicated that they were prejudiced by Plaintiff's delay. (DE 88 at 2.) Thus, the Court will not consider their motion to be unopposed, and will consider all briefing.

Additionally, Defendants' argue that Attachment A (DE 86 at 13–17) to Plaintiff's response is hearsay. (DE 88 at 2.) Hearsay, an out of court statement used to prove the truth of the matter asserted, is inadmissible evidence. Fed. R. Evid. § 801. Inadmissible evidence may not be considered at the summary judgment level. *Lee*, 432 F. App'x at 441 ("[T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). However, there are various exemptions and exceptions that allow material to be admitted for some *other* purpose besides a hearsay purpose. *See, e.g.*, Fed. R. Evid. §§ 801–804.

Here, pages 13–17 of Attachment A are Plaintiff's handwritten calendar entries dating from May–September 2014. The entries purportedly detail how Hoosier is feeling, although the writing is not always legible. For example, there is a note on June 2 indicating "no blood," on June 3 describing "bowel movements," and on June 17 alleging "pain meds stopped," *inter alia*. Hoosier's calendar entries appear to be admissible under Rule 803(1) as a present sense impression—a statement "describing or explaining an event or condition, made while or

immediately after the declarant perceived it."  Fed. R. Evid. § 803(1).  There are three elements to a present sense impression: the declarant personally perceived the event described, the declaration is a simple explanation or description of the event, and the declaration and the event are contemporaneous.  5 WEINSTEIN'S FED. EVID. § 803.03.

Additionally, the calendar entries may be admissible under Rule 803(3), which permits statements of a declarant's "emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health);" and even under Rule 803(5) if the recorded recollection was, among other things, one Plaintiff "once knew about but cannot recall well enough to testify fully and accurately."  Fed. R. Evid. §§ 803(3), (5).[2]  It is probably not admissible under Rule 803(4), which permits a statement that is "reasonably pertinent to" medical diagnosis, unless Plaintiff's motive in writing the calendar entries was to promote such diagnosis.  5 WEINSTEIN FED. EVID. § 803.06.

Thus, the Court will not conclude that Plaintiff's calendar entries are inadmissible hearsay.  Nevertheless, Defendants are free to challenge their admissibility should this case go to trial.

### 2.    Claim of Deliberate Indifference

---

[2] Under Fed. R. Evid. 803(5), "[i]f admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party."

To establish a violation under 42 U.S.C. § 1983, a plaintiff can show that the defendant acted with "deliberate indifference to serious medical needs." *Watkins v. City of Battle Creek,* 273 F.3d 682, 685 (6th Cir. 2001) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (holding that the Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's "serious medical needs")).A deliberate indifference claim has both objective and subjective components. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Phillips v. Roane County, Tenn.*, 534 F.3d 531 (6th Cir. 2008). The objective component requires a "sufficiently serious" medical need. *Farmer,* 511 U.S. at 897. Most circuits hold that a medical need is sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* However, the "obviousness" of a prisoner's medical needs "may *also* be decided by the *effect* of delay in treatment. *Id.* (internal quotation marks and citations omitted) (noting lines of decision regarding delayed treatment that caused injury or delayed administration of medication).

The subjective component of a deliberate indifference claim requires a "sufficiently culpable" state of mind. *Id.* at 896. A plaintiff need not show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001) (quoting

*Farmer,* 511 U.S. at 835); *see also Horn v. Madison Cnty. Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994) ("Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain.").  It is enough to show reckless disregard: "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer,* 511 U.S. at 836.  But this means that "[d]eliberate indifference is not mere negligence.  Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [a plaintiff's] health and safety." *Phillips,* 534 F.3d at 539.  Thus, a "sufficiently culpable" state of mind is one that is, at least, reckless—not necessarily intentional, but not merely negligent." *Farmer*, 511 U.S. at 836 ("equivalent of recklessly disregarding"); *Horn*, 22 F.3d at 660 ("without evidence of conscious intent to inflict pain," albeit with "deliberateness tantamount to intent to punish"); *Farmer*, 534 F.3d at 835 ("a state of mind more blameworthy than negligence") (citing *Estelle*, 429 U.S. at 104).

### i.  *Objective Component*

For purposes of this motion, the Court assumes that Hoosier had a "sufficiently serious" medical need as an objective matter. *Farmer,* 511 U.S. at 897. For one, his condition was "diagnosed by a physician as mandating treatment." *Id.* He was diagnosed with colitis in January of 2014, where he was prescribed a litany of medications and advised to see "a gastrointestinal clinic at the prison on a regular

basis." (DE 1 at 11 ¶ 24.)  By May and June, the months he respectively saw Xue and Sears, he had a history of hospital visits, colonoscopies, blood transfusions, and medical prescriptions.  (*Id.* at 1–19.)  Two, his condition was likely "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  In his verified Complaint, Hoosier alleges that he regularly experienced—and complained about—his blood loss, dizziness, pain, cramps, and incontinence.  (*See id.* ¶¶ 34–36, 53.)  *See Runkle v. Fleming*, 435 Fed. App'x 483, \*2 (6th Cir. Aug. 12, 2011) ("A *history* of colon cancer, with the potential of recurrence, presents a sufficiently serious medical need.") (emphasis added).

## ii.  Subjective Component

Hoosier alleges that Xue failed to elevate his kite to a medical provider in May 2014 and that Sears repeatedly failed to give him full doses of pain medication on June 4, 2014 (instead giving him half doses despite complaints that the pain medication was not working).  (DE 86 at 1–7; see also DEs 1 ¶ 73, 80-3 ¶ 7.)  There are two chief distinctions between the allegations against Xue and Sears.  First, the allegations against Xue are based on a failure to act, while the allegations against Sears are based on her active behavior.  Second, the allegations against Xue are based on one of her decisions, while the allegations against Sears are based on her repeated decisions, albeit over the course of a single day.  (DE 80-3 ¶¶ 6–7 (indicating that Sears gave Hoosier one Norco tablet at 7:50am, 12:20pm, and

14

4:40pm, while his prescription was for one to two Norco tablets every four hours as needed ("As such, I would have distributed Hoosier one tablet unless he indicated, or it appeared to me that he needed the additional tablet.")).)

### iii. Inadequate Medical Care

Nevertheless, neither Xue nor Sears violated the Eighth Amendment. A "mere difference of opinion between the plaintiff and his doctor regarding diagnosis and treatment does not state a claim under the Eighth Amendment." *Selby v. Martin*, 84 Fed. App'x 496, 499 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Although fundamental fairness "mandate[s] that medical care be provided to one who is incarcerated and may be suffering from serious injury," that "is not to say that every request for medical attention must be heeded." *Westlake*, 537 F.3d at 860. Here, Xue knew that Hoosier had an upcoming medical appointment in about a week. His appointment was already scheduled, and Xue was not required to change it. Likewise, Sears gave Hoosier one Norco tablet approximately every four hours, in accordance with his prescription, which permitted one to two tablets. The prescription was to be administered *as needed*, so Sears was not required to give Hoosier two Norco tablets. The prescription itself implies some level of judgment on Sears's part, and she exercised that judgment within the approved range, even if Plaintiff thought he needed more of the drug or that his pain warranted it. Both Defendants pursued "a

15

competent and conscientious course of medical treatment, and [Plaintiff's] dissatisfaction with his treatment does not state a claim under the Eighth Amendment." *Selby*, 84 Fed. App'x at 499 (citing *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5).

Even if it would have been more prudent for Xue to immediately change Hoosier's appointment, or for Sears to immediately give Hoosier two Norco tablets, this does not mean that his medical treatment was "so woefully inadequate as to amount to no treatment at all." *Colwell v. Corizon Healthcare Inc.*, 2014 WL 6686764, *4 (E.D. Mich. Nov. 26, 2014) (citing *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011)) (internal quotation marks omitted). Instead, in evaluating an Eighth Amendment claim, courts "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received *inadequate* medical treatment." *Id.* (emphasis added). When a prisoner claims his care was inadequate, "[c]ourts are generally reluctant to second guess the medical judgment of prison officials." *Id.* There is a narrow exception for cases where medical treatment was "so woefully inadequate as to amount to no treatment at all." *Id.* But that is not the case here. Here, Xue maintained Hoosier's medical appointment, and Sears provided medication within a small permissible range. Xue's decision not to reschedule the appointment is not akin to "no treatment

at all;" Sears' decision to provide the minimum dose is not akin to "no treatment at all"—such allegations cannot be the sole basis for an Eighth Amendment violation.

### 3.    Defense of Eleventh Amendment Immunity

Defendants argue that MDOC officials are entitled to Eleventh Amendment immunity from Plaintiff's § 1983 claim when they are sued in their official capacity.

The Eleventh Amendment applies to a suit brought against a state by one of its own citizens. *Ex parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment describes the contours of sovereign immunity, providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This means that "[t]he Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials in their official capacities for damages." *Cady v. Arenac County,* 574 F.3d 334, 342 (6th Cir. 2009). These officials include MDOC officials. *McCoy v. State of Michigan,* No. 08-1641, 2010 WL 841198, *7 (6th Cir. March 10, 2010) ("Because sovereign immunity extends to 'state instrumentalities,' and the MDOC is 'an arm of the State of Michigan,' the MDOC is entitled to sovereign immunity on the § 1983 claim as well." (citations omitted)).

Here, Xue and Sears are respectively employed at Cotton Facility and Egeler Center, both of which are operated by MDOC. Thus, to the extent that they are being

sued in their official capacities, they are entitled to sovereign immunity against Plaintiff's § 1983 claim based on the Eleventh Amendment to the U.S. Constitution.

Rules can have exceptions. However, none appear to apply, and Plaintiff's § 1983 claim fails for another reason as well. Section 1983 can only apply to a "person" who, "under color of law," subjects another person to "the deprivation of a constitutional right." 42 U.S.C. § 1983. MDOC Defendants in their official capacities are not deemed "persons" under § 1983. *Fletcher v. Michigan Dept. of Corrections*, 2010 WL 1286310, *4 (E.D. Mich. March 30, 2010) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989); *Dulai v. Mich. Dep't of Cmty. Health,* 71 F. App'x 479, 481 (6th Cir. 2003) (*"Will* precludes Plaintiff's action against [the Michigan Department of Community Health].")). Therefore, Plaintiff cannot bring an official-capacity claim against Defendant Xue or Sears.

### 4. Defense of Qualified Immunity

Defendants Xue and Sears were sued in their official and individual capacities. An individual-capacity claim is distinct from an official-capacity claim. *See Kentucky v. Graham,* 473 U.S. 159, 165–67 (1985). The former claim may attach personal liability to the government official, whereas the latter may attach liability only to the governmental entity. *See id.* at 166–67.

Defendants argue that MDOC officials sued in their individual capacity are entitled to qualified immunity. Qualified immunity bars § 1983 claims brought

against public officials in their individual capacity, provided their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

But the only pure questions of law regarding qualified immunity are "(1) whether, considering the evidence in the light most favorable to the party injured, a constitutional right has been violated; and (2) whether that right was clearly established." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008) (citing *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310–11 (6th Cir.2005); *Comstock v. McCrary,* 273 F.3d 693, 701 (6th Cir. 2001)). The Sixth Circuit has held that deliberate indifference to a serious medical need does rise to the level of a constitutional right violation where both objective and subjective components are met. *Id.* (citing *Farmer*, 511 U.S. at 833).

However, as discussed at length above, Plaintiff has not established both the objective and subjective components of deliberate indifference with respect to either Xue or Sears. This is because a "mere difference of opinion between the plaintiff and his doctor regarding diagnosis and treatment does not state a claim under the Eighth Amendment." *Selby*, 84 Fed. App'x at 499 (citing *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5 (6th Cir. 1976)). Furthermore, he was given some

19

medical treatment, which was not "so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5.

### E.    Conclusion

For the reasons set forth below, the Court should **GRANT** the Motion for Summary Judgment filed by MDOC Defendant Renyu Xue and Helen Sears.  (DE 80.)

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*   Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 12, 2018        s/*Anthony P. Patti*
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 12, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager